IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBERT L. JORDAN

    v.                 : Civil Action No. DKC 2004-1091

ALTERNATIVE RESOURCES
CORPORATION, et al.      :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case are (1) the motion of Plaintiff Robert L. Jordan for leave to amend his complaint pursuant to Fed.R.Civ.P. 15(a) (paper no. 23, hereinafter "Am. Compl."), and (2) the motion of Defendant International Business Machines, Inc. ("IBM"), joined by Defendant Alternative Resources Corp. ("ARC"), to dismiss the original complaint for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6) (paper no. 6). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no further hearing being deemed necessary. For the reasons that follow, the court denies Plaintiff's motion for leave to amend, in part with prejudice and in part without prejudice to renewal, and grants Defendants' motion to dismiss.

**I.  Background**

Given the procedural posture of this case, it is logical and more efficient to examine Plaintiff's proposed amended

complaint, rather than the original complaint.  Plaintiff, in his proposed amended complaint, alleges the following facts. Plaintiff, an African-American, was jointly employed by Defendants Alternative Resources Corp. ("ARC") and International Business Machines Corp. ("IBM").  ARC provides information technology management and staffing management services to IBM. Plaintiff worked for ARC at IBM's office as a network technician.  IBM exercised control over Plaintiff's day-to-day employment at its office in Gaithersburg, Maryland.

On October 23, 2002, Plaintiff and a co-worker employed by IBM, Jay Farjah, were at their workplace watching a television report about the capture of two African-Americans suspected of multiple sniper-style shootings.  Farjah said, in Plaintiff's presence: "They should put those two black monkeys in a cage with a bunch of black apes and let the apes fuck them." Offended, Plaintiff related the remark to several co-workers. At least two co-workers told Plaintiff that they had heard Farjah make similar offensive comments many times before.

Believing that Farjah's remark gave rise or would give rise to a hostile work environment, Plaintiff reported the incident to two of his IBM managers, Mary Ellen Gillard (his direct supervisor) and C. J. Huang (another supervisor), and requested that IBM tell Farjah not to make such comments.  The managers asked Plaintiff to submit the offensive comment in writing,

which he did.   Huang expressed skepticism about Plaintiff's complaint, asked whether Plaintiff had considered the impact his incident report might have on Farjah, and suggested that Farjah might have been joking.   Plaintiff also reported the incident to an ARC manager, Sheri Mathers.

Later, Gillard told Plaintiff that Farjah denied making the comment as Plaintiff reported it, but admitted saying "they should put those two monkeys in a cage."   Plaintiff replied that he wanted to raise his complaint with IBM's site manager, Ron Thompson.

Immediately after the incident and complaints, Plaintiff was directed by Gillard, without explanation, to change his reporting time from 6:30 AM to 9:00 AM, despite previously having been approved for a 6:30 AM start time so that he could finish work early enough to pick up his son after school. Gillard also began assigning more work to him.   Later, Huang made a crude, derogatory remark and gesture to Plaintiff at an office party, witnessed by co-workers.

On November 21, 2002, Mathers fired Plaintiff, stating that he was "disruptive," that his position "had come to an end," and that the people at IBM "don't like you and you don't like them."

On February 5, 2004, Plaintiff filed a complaint against Defendants in the Circuit Court for Montgomery County, alleging that Defendants fired him in retaliation for having reported

Farjah's offensive remark.   The complaint asserted claims of retaliation against both defendants pursuant to § 27-19 of the Montgomery County Code; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*; and 42 U.S.C. § 1981.   The complaint also asserted a claim of tortious interference with contract against IBM.

Defendants removed to this court.   IBM then moved to dismiss.  Following a hearing before this court on the motion to dismiss, Plaintiff moved for leave to file his amended complaint.   The proposed amended complaint asserts one count of statutory retaliation under § 27-19, Title VII, and 42 U.S.C. § 1981 against both Defendants (count I), and a second count of retaliation under § 27-19, pled in the alternative against IBM as "a person" (count II).   The amended complaint also asserts "malicious interference with economic relationships and/or tortious interference with contract" (count III) against IBM, and breach of contract (count IV), fraud (count V), wrongful discharge (count VI), and race discrimination in violation of 42 U.S.C. § 1981 (count VII) against both Defendants.

## II. Standard of Review

### A.   Motion for Leave to Amend

Fed.R.Civ.P. 15(a) states that a party may amend a pleading after a responsive pleading has been served "only by leave of court or by written consent of the adverse party; and leave

4

shall be freely given when justice so requires."  Undue delay, bad faith, undue prejudice to the opposing party, and futility of amendment are all examples of reasons not to grant such leave.  *See Foman v. Davis,* 371 U.S. 178, 182 (1962); *United States v. Pittman,* 209 F.3d 314, 317 (4th Cir. 2000) (citing *Foman*).

### B.   Motion to Dismiss

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint.  *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  Accordingly, a 12(b)(6) motion ought not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

In its determination, the court must consider all well-pled allegations in a complaint as true, *see Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations

in the light most favorable to the plaintiff.  *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).  The court must disregard the contrary allegations of the opposing party.  *See A.S. Abell Co. v. Chell*, 412 F.2d 712, 715 (4th Cir. 1969).  The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

"In deciding a Rule 12(b)(6) motion, the court will consider the facts stated in the complaint and the documents attached to the complaint.  The court may also consider documents referred to in the complaint and relied upon by plaintiff in bringing the action."  *Abadian v. Lee,* 117 F.Supp.2d 481, 485 (D.Md. 2000) (citing *Biospherics, Inc., v. Forbes, Inc.,* 989 F.Supp. 748, 749 (D.Md. 1997), *aff'd,* 151 F.3d 180 (4th Cir. 1998)).  When doing so, the court need not convert a Rule 12(b)(6) motion to dismiss to one for summary judgment so long as it does not consider matters "outside the pleading."  *See* Fed.R.Civ.P. 12(b) ("If [on a 12(b)(6) motion to dismiss,] matters outside the pleading are

6

presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . ."); *Laughlin v. Metro. Washington Airports Auth.,* 149 F.3d 253, 260-61 (4th Cir. 1998) (citing Rule 12(b)); *Luy v. Balt. Police Dep't,* 326 F.Supp.2d 682, 688 (D.Md. 2004) ("The court may consider a document submitted by the defendant in support of a motion to dismiss, however, '[if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.') (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.,* 367 F.3d 212, 234 (4th Cir. 2004)).

## III. Analysis

Because granting leave to amend is futile only if the amended complaint fails to state any claim upon which relief can be granted, the standard for analyzing the claims in the original and amended complaints is the same.  The court therefore considers the claims in both complaints together. Plaintiff initially contends that both ARC and IBM were his employers and asserts several claims against both Defendants. If, however, IBM was not his employer, Plaintiff asserts other claims in the alternative.

## A.  Claims against ARC and IBM as employer

### 1.    Statutory Retaliation

In order to state a claim for statutory retaliation under either federal or Maryland law, Plaintiff must allege facts sufficient to show that (1) he engaged in a statutorily protected activity; (2) an adverse employment action occurred; and (3) the adverse action was causally related to the protected activity. *Honor v. Booz-Allen & Hamilton, Inc.,* 383 F.3d 180, 188 (4th Cir. 2004) (stating standard for § 1981 retaliation claim); *Mackey v. Shalala,* 360 F.3d 463, 469 (4th Cir. 2004) (Title VII); *Magee v. Dansources Tech. Servs.,* 769 A.2d 231, 252-53 (Md.Ct.Spec.App. 2001) (applying Title VII criteria to both federal and state retaliation claims) (citing *Chappell v. S. Md. Hosp.,* 578 A.2d 766, 773 (1990) (stating that because Maryland's anti-retaliation statute closely tracks the language of Title VII, criteria are "likely" the same)). Here, Plaintiff contends that IBM and ARC fired him in retaliation for reporting Farjah's racist remark.

Defendants contend that Plaintiff has failed to allege that he engaged in a statutorily protected activity. The court agrees.

Protected activities fall into two distinct categories: participation and opposition. *See* 42 U.S.C. § 2000e-3(a).[1] "An

---

[1] 42 U.S.C. §§ 2000e-3(a) states, in pertinent part: "It shall be an unlawful employment practice . . . to discriminate against any individual . . . because he has opposed any practice
(continued...)

employer may not retaliate against an employee for participating in an ongoing investigation or proceeding under Title VII, nor may the employer take adverse employment action against an employee for opposing discriminatory practices in the workplace." *Laughlin v. Metropolitan Wash. Airports Auth.,* 149 F.3d 253, 259 (4th Cir. 1998). Plaintiff does not allege that he was participating in an ongoing investigation or proceeding at the time of his termination, so he can only state a Title VII claim for retaliation if he alleges his complaint constituted an act "opposing discriminatory practices in the workplace." *Id.*

"[A] plaintiff bringing a claim under the opposition clause of Title VII  . . .  must  . . .  at a minimum have held a reasonable good faith belief at the time he opposed an employment practice that the practice was violative of Title VII." *Adams v. Giant Food, Inc.,* 225 F.Supp.2d 600, 606 (D.Md. 2002) (citing cases). To allege reasonable good faith belief, a plaintiff must allege facts which, taken as true, establish "that his belief was objectively reasonable . . . .'" *Id.* (citing *Little v. United Techs.,* 103 F.3d 956, 960 (11th Cir.

---

[1](...continued)
made an unlawful employment practice by this title, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title."

1997)).  Farjah's comment, which Plaintiff does not even allege
was directed at him, simply is not such a violation.  Title VII
is not a "civility code."  *Oncale v. Sundowner Offshore Servs.,
Inc.,* 523 U.S. 75, 80 (1998).  It is settled law that "isolated
incidents (unless extremely serious) will not amount to
discriminatory changes in the 'terms and conditions of
employment'" that "create an abusive working environment," and
are therefore not actionable under Title VII.  *Faragher v. Boca
Raton,* 524 U.S. 775, 786-88 (1998) (applying racial harassment
standards in sexual harassment case, and citing, among others,
*Rogers v. EEOC,* 454 F.2d 234, 238 (5th Cir. 1971) ("Mere
utterance of an ethnic or racial epithet which engenders
offensive feelings in an employee" does not sufficiently alter
terms and conditions of employment to create Title VII
violation), *cert. denied,* 406 U.S. 957 (1972)) (citations and
internal quotation marks omitted).  "Properly applied, [the
Title VII standard for judging hostility] will filter out
complaints attacking the ordinary tribulations of the workplace,
such as the sporadic use of abusive language . . . .  We have
made it clear that conduct must be extreme to amount to a change
in the terms and conditions of employment . . . ."  *Faragher,*
524 U.S. at 788 (citation and internal quotation marks omitted).
Plaintiff alleges that he heard only the single remark by

Farjah.  Without more, Plaintiff has not, as a matter of law, alleged that his complaint opposed a discriminatory practice in the workplace.  Accordingly, the retaliation claims in his original complaint are insufficient, and will be dismissed.

Plaintiff's amended retaliation claim is substantially the same as in his original complaint, except that Plaintiff now also alleges that, after the incident but before he reported it, he was told that the same coworker previously had made other racist remarks.  This additional fact, however, still does not make "objectively reasonable" Plaintiff's belief that Defendants engaged in unlawful employment practices by allowing an abusive working environment to persist.

In determining whether harassment constitutes a hostile work environment, courts "must look at all the circumstances to determine whether a work environment is hostile or abusive. These circumstances include: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." *Smith v. First Union Nat'l Bank,* 202 F.3d 234, 242 (4th Cir. 2000) (citing *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23 (1993)).  Here, no facts are alleged to indicate that these prior comments, taken alone or in conjunction with the incident involving Plaintiff, constituted

a hostile work environment.  Plaintiff's amended complaint does not specify the frequency, severity, or nature of the prior comments, nor even any aspect of their content; it merely states that "two of the co-workers told Jordan that they had heard Farjah make similar offensive comments many times before."  Am. Compl. at ¶ 10.  Plaintiff does not -- indeed, obviously cannot -- allege that the prior comments interfered with his work performance.  Plaintiff's amended allegations thus fail to state facts sufficient to show an objectively reasonable belief that Farjah's comments constituted a hostile work environment.  The amended pleading therefore also fails to state a retaliation claim.

## 2.  Wrongful Discharge

In Maryland, a wrongful discharge cause of action may be sustained when an at-will employee is terminated in contravention of "some clear mandate of public policy."  *Adler v. Am. Standard Corp.,* 432 A.2d 464, 473 (Md. 1981).  "The complaining party must plead with particularity the source of the public policy" allegedly violated by her termination. *Porterfield v. Mascari II, Inc.,* 823 A.2d 590, 596 (Md. 2003); *King v. Marriott Int'l, Inc.,* 866 A.2d 895, 903 (Md.Ct.Spec.App. 2005) (quoting *Porterfield v. Mascari II, Inc.,* 788 A.2d 242 (Md.Ct.Spec.App. 2002), *aff'd,* 823 A.2d at 609).  Plaintiff does not so plead.  Defendants note in their opposition that

Plaintiff's complaint has not done so, instead asserting only that "the conduct of ARC and IBM violated the public policy of the State of Maryland and constitutes a wrongful discharge under Maryland common law.  Maryland public policy prohibits employers from punishing employees who report racially offensive behavior that they believe in good faith violates anti-discrimination laws."  Am. Compl. at ¶ 40.  In reply, Plaintiff again fails to cite any source for this public policy, asserting only that "it violates the public policy of the United States, Maryland and Montgomery County to fire an individual solely for making a good faith complaint of discrimination."  Paper no. 32, at 9.  Anti-retaliation laws do not, however, protect every "good faith complaint of discrimination;" as noted *supra* at III.A.1, they are not broad civility codes, and good faith belief that a violation has occurred is not sufficient if it is unreasonable. Still, Plaintiff seems to believe that, even if he cannot state a retaliation claim, the facts he alleges are near enough to stating such a claim that there must be some public policy against what has been done to him.  Maryland wrongful discharge law is more rigorous than that.  Plaintiff has given this court and Defendants no source of public policy based upon which "to determine as a matter of law whether the public policy asserted by the plaintiff constitutes a clear, pre-existing mandate" making discharge here wrongful.  *Terry v. Legato Sys., Inc.*, 241

13

F.Supp.2d 566, 570 (D.Md. 2003) (citing *Porterfield,* 788 A.2d at
245).   The wrongful discharge claim as pled is therefore
insufficient as a matter of law.   The court will permit
Plaintiff to amend this count to specify the source, if any, of
the public policy exception upon which the claim rests.

### 3.   Breach of Contract

Plaintiff alleges that Defendants breached their contracts
with him by firing him for reporting the Farjah incident.
Plaintiff contends that, because Defendants "have policies that
require employees to report to management any conduct that the
employees perceive to be discriminatory," Am. Compl. at ¶ 11,
and because those policies are "part of the contractual
relationship" between Plaintiff and Defendants, *id.* at ¶ 36, his
termination constituted a breach of contract.

This claim fails because Plaintiff has failed to allege
facts of a contractual provision protecting him from termination
at will.   Plaintiff contends that "Defendants' policies are part
of the contractual relationship that Jordan had with
defendants," Am. Compl. at ¶ 36, but as IBM notes, even if that
were true, Plaintiff has not alleged that any policy of IBM's,
in its handbook or otherwise, limits IBM's discretion to fire
him at will.   Neither has Plaintiff alleged any such policy of
ARC's.   An at-will employee "may maintain an action for breach
of an implied employment contract *if existing general personnel*

14

*policies or procedures limit the employer's discretion to terminate an employee*," *Gwinn v. Food Lion, L.L.C.*, 195 F.Supp.2d 728, 729-30 (D.Md. 2002) (quoting *Hrehorovich v. Harbor Hosp. Ctr., Inc.,* 614 A.2d 1021, 1031 (Md.Ct.Spec.App. 1992)) (italics added), but no such limitation is alleged here. Plaintiff's citation of *Dahl v. Brunswick Corp.,* 356 A.2d 221 (Md. 1976), is inapposite:  In *Dahl,* the defendant agreed that its policy on severance pay constituted a unilateral contract. *Id.* at 224.  Brunswick's written policy specifically promised severance benefits to Plaintiff, and when that division was sold to another company, that company promised in writing to continue Brunswick's severance policy with respect to those employees. *Id.*  Here, no such promise has been alleged.

Furthermore, even if Plaintiff alleged that Defendants' handbooks contained language restricting their rights to terminate him at will, such language would not support a breach of contract claim, because neither IBM's handbook nor ARC's handbook is a contract.  In Maryland, an employee handbook that states that it is not a contract cannot be construed as a contract. *Conkwright v. Westinghouse Elec. Corp.,* 739 F.Supp. 1006, 1020-21 (D.Md. 1990) ("Although the validity of implied employment contracts has been recognized, Maryland courts have refused to find employment contracts where . . . an express

disclaimer was included.") (citing *Fournier v. United States Fid. & Guar. Co.,* 569 A.2d 1299 (Md. 1990) and *Castiglione v. Johns Hopkins Hosp.,* 517 A.2d 786 (Md.Ct.Spec.App. 1986), *cert. denied,* 523 A.2d 1013 (1987)).  IBM's policy handbook, attached to its response to Plaintiff's motion for leave to amend, specifically states:  "This booklet is not a contract."  Paper no. 28, Ex. A, attachment, at 2.  The preface to ARC's handbook likewise states plainly: "THIS HANDBOOK IS NOT INTENDED TO BE A CONTRACT OR TO CREATE OBLIGATIONS, RATHER IT DESCRIBES THE COMPANY'S GENERAL PHILOSOPHY CONCERNING PROCEDURES."  Paper no. 27, Ex. 1.  The policies therein are therefore explicitly, and thus legally, non-contractual.

For both of these reasons, the breach of contract claims are insufficient as a matter of law as to both Defendants.

### 4.  Fraud

Plaintiff alleges that Defendants defrauded him by "both explicitly and implicitly promis[ing]" him that he would not be retaliated against for reporting discriminatory comments.  Am. Compl. at ¶ 38.  In Maryland, in an action for fraud, a plaintiff must show that (1) the defendant made a false representation to the plaintiff, (2) the defendant either knew of its falsity or was recklessly indifferent as to its truth, (3) the misrepresentation was made *for the purpose of defrauding the plaintiff*, (4) the plaintiff relied on the misrepresentation

16

and had the right to rely on it, and (5) the plaintiff suffered compensable injury resulting from the misrepresentation. *Md. Envtl. Trust v. Gaynor,* 803 A.2d 512, 516 (Md. 2002) (quoting *VF Corp. v. Wrexham Aviation,* 715 A.2d 188, 192-93 (Md. 1998)) (italics added). Here, at worst, Plaintiff alleges that Defendants' policies were misleading, but he alleges no facts to show that the purpose of Defendants' policies was to defraud him. The fraud claim is therefore insufficient as a matter of law.

### 5.   Race Discrimination under 42 U.S.C. § 1981

Plaintiff alleges that "Defendants fired Jordan for reporting a racist remark in the workplace because he is African-American, in violation of 42 U.S.C. § 1981. In the alternative, Jordan's race was a motivating factor in the conduct and decisions of IBM and/or ARC." Am. Compl. at ¶ 42.

To state a § 1981 claim, a plaintiff "must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 7 F.3d 1085, 1087 (2nd Cir. 1993) (citing *Baker v. McDonald's Corp.,* 686 F.Supp. 1474, 1481 (S.D.Fla. 1987), *aff'd,* 865 F.2d 1272 (11th

Cir. 1988), *cert. denied,* 493 U.S. 812 (1989)).  As noted *supra* at II, the bald assertion of a legal conclusion, e.g., that Defendants discriminated against Plaintiff because he is African-American, is insufficient to overcome a motion to dismiss.  *See Revene v. Charles County Comm'rs*, 882 F.2d at 873 (unsupported legal allegations); *Papasan v. Allain*, 478 U.S. at 286 (legal conclusions couched as factual allegations).

Here, Plaintiff has alleged that he was fired for reporting a racist remark, but he has alleged no facts suggesting that his own race played any role in his termination.  The only person alleged to have engaged in race discrimination is Farjah, and Farjah is not alleged to have contributed to Plaintiff's termination.  His § 1981 claim is therefore insufficient as a matter of law.  Although no facts alleged thus far have indicated that Defendants discriminated against Plaintiff because of his race, the court will permit Plaintiff to amend this count to allege any such facts.

**B.  Claims that assert alternatively that IBM was not Plaintiff's employer**

**1.  Alternative Retaliation Claim**

In his amended complaint, Plaintiff alternatively alleges that IBM was not his employer, but that IBM nonetheless unlawfully retaliated against Plaintiff under § 27-19 of the

Montgomery County Code.  This count also fails to state a claim upon which relief can be granted.

The parties disagree as to the initial question of whether § 27-19 can impose liability on a party who is not a plaintiff's employer.  Plaintiff contends that § 27-19 applies to IBM even if IBM was not his employer, because the county statute is broader than Title VII and § 1981 in that it prohibits retaliation by "person[s]," not just employers.  *Compare* § 27-19(c) ("A *person* must not: (1) retaliate against any person . . . .") (italics added) *with* § 27-19(a) (prohibiting various forms of discrimination by employers, employment agencies, and labor organizations).  IBM counters that § 27-19 itself is titled, and is meant only to address, "Discriminatory Employment Practices." *See id.*  *See also Broadcast Equities v. Montgomery County,* 718 A.2d 648, 653 (Md.Ct.Spec.App. 1998) (stating that section 27 is Montgomery County's "comprehensive statutory scheme aimed at eliminating discrimination in the County in the area[] of . . . employment," and that § 27-19 is specific to "discriminatory employment practices"), *vacated on other grounds,* 758 A.2d 995 (Md. 2000); Stanley Mazaroff, Maryland Employment Law § 7.01, at n.1.1 (2nd ed. 2003) (stating that § 27-19 prohibits employment discrimination).  This cannot mean, however, that liability can only be assigned to employers themselves; otherwise, the statute's distinction between employers and persons would be

meaningless.  It is easy to see how a non-employer's influence over an employer might in some instances give rise to a discriminatory employment practice, and it may well be that such a situation was contemplated by the drafters of § 27-19. However, as Plaintiff's claim fails for other reasons, *see infra,* the court need not resolve this issue definitively.

IBM also asserts that, because Plaintiff raised only the retaliation claim in his original complaint before the Maryland Commission on Human Relations, he has not exhausted his administrative remedies under Md. Code Ann. art. 49B, § 42(b)(2),[2] with respect to the claims he has added in his amended complaint, including the instant alternative retaliation claim. Plaintiff counters that because the additional counts are plainly related to the original claims, he has complied with the exhaustion requirements.  In Title VII cases, courts may exercise jurisdiction "over claims encompassed within the EEOC charge and claims 'like or related to allegations contained in the charge, or which grow out of such allegations.'"  *Riley v. Technical & Mgmt. Servs. Corp.,* 872 F.Supp. 1454, 1459 (D.Md. 1995) (citing *Nealon v. Stone,* 958 F.2d 584, 590 (4th Cir.

---

[2] Section 42(b)(2) states, in pertinent part, that an action alleging employment discrimination "may not be commenced sooner than 45 days after the aggrieved person files a complaint with the county agency responsible for handling violations of the county discrimination laws."

1992)); *see Bryant v. Bell Atl. Md., Inc.,* 288 F.3d 124, 132 (4th Cir. 2002) ("An administrative charge of discrimination does not strictly limit a Title VII suit which may follow; rather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination.") (quoting *Chisholm v. United States Postal Serv.,* 665 F.2d 482, 491 (4th Cir. 1981)). While the court can find no cases holding that the "like or related" doctrine also applies to section 27 claims, the similarities between Title VII and section 27 and existence of the worksharing relationship between the EEOC and the Maryland Commission on Human Relations ("MCHR"), whereby a claim filed before one commission is effectively filed before both, *see* 29 C.F.R. § 1601.74 (designating MCHR as a Fair Employment Practices ("FEP") agency), lead to the conclusion that Plaintiff may have complied with the applicable exhaustion requirements. *See also Cohen v. Montgomery County Dept. of Health & Human Servs.,* 817 A.2d 915, 925-27 (Md.Ct.Spec.App. 2003) (implying parallels between exhaustion requirements of Title VII and section 27).

Plaintiff's claim nonetheless fails.  His amended complaint alleges that "IBM's conduct constituted retaliation in violation of § 27-19(c)(1) of the [Montgomery County] Code."  Am. Compl. at ¶ 29.  As noted *supra* at III.A.1, the language of section 27-

19(c)(1), which bars retaliation for "lawfully opposing any discriminatory practice prohibited under this division" or "filing a complaint, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under this division," is nearly identical to that of Title VII's retaliation provision, 42 U.S.C. § 2000e-3(a). Recognizing that similarity, and consistent with *Magee*, 769 A.2d at 252-53, the court applies the same three-prong test for sufficiency of a retaliation claim. This is true regardless of whether IBM was Plaintiff's employer: Either way, Plaintiff still has failed to allege opposition to a discriminatory practice. *See supra* at III.A.1. Plaintiff has therefore failed to state a claim under § 27-19(c)(1).

Plaintiff also asserts in his amended complaint that "IBM's conduct constituted other unlawful behavior as described in subparagraphs (1), (2), (3) and (4) of § 27-19(c) of the Code." Am. Compl. at ¶ 30. Subparagraphs (2)-(4) state that a person must not:

> (2) assist in, compel, or coerce any discriminatory practice prohibited under this division;
> (3) obstruct or prevent enforcement or compliance with this division; or
> (4) attempt directly or indirectly to commit any discriminatory practice prohibited under this division.

*Id.*  Plaintiff does not state what acts by IBM allegedly violate these subparagraphs.  As just discussed, Plaintiff cannot state a claim for unlawful retaliation by IBM against Plaintiff.  The only other plausibly "discriminatory practice" is Farjah's comment itself, but Plaintiff does not allege that IBM either assisted, compelled, or coerced Farjah into making the comment, § 27-19(c)(2), nor that IBM obstructed enforcement of any anti-discrimination laws, § 27-19(c)(3), or otherwise attempted directly or indirectly to commit that discriminatory practice, § 27-19(c)(4).  Thus, Plaintiff has failed to state any claim under § 27-19(c).  Count two of Plaintiff's amended complaint is therefore insufficient as a matter of law.

### 2.   Tortious/Malicious Interference

In his original complaint, Plaintiff pled one count labeled "Tortious Interference with Contract" against IBM.  In his amended complaint, Plaintiff pleads in the alternative that he was not IBM's employee, that his "employment with ARC was contractual in nature," and that IBM maliciously interfered with his relationship with ARC by inducing ARC to fire him in retaliation for his having reported Farjah's racist remark.  Am. Compl. at ¶ 32.  Plaintiff therefore alleges that "IBM's conduct constituted malicious interference with Jordan's economic relationship with ARC and/or tortious interference with his contract for employment with ARC."  Id. at ¶ 34.

The tort pled by Plaintiffs "has two general manifestations." *Macklin v. Robert Logan Assocs.,* 639 A.2d 112, 116-17 (Md. 1994) (citing *Natural Design, Inc. v. Rouse Co.,* 485 A.2d 663, 674 (Md. 1984)).   It is committed "when a third party's intentional interference with another in his or her business or occupation induces a breach of an existing contract or, absent an existing contract, maliciously or wrongfully infringes upon an economic relationship." *Macklin,* 639 A.2d at 117 (citing *Sharrow v. State Farm Mutual,* 511 A.2d 492, 497 (Md. 1986)).   The *Macklin* court made clear that by "existing contract," it meant only a contract not terminable at will.  *See id.* at 119, 120 ("In the absence of an existing contract, it is necessary to prove both a tortious intent and improper or wrongful conduct," but "[w]hen the existing contract is not terminable at will, inducing its breach, even for competitive purposes, is itself improper . . . .").   Here, Plaintiff concedes that he was an at-will employee.   Plaintiff attempts to assert, in legal contradiction, that his relationship with ARC was "contractual in nature," but has alleged no facts to support that legal conclusion.  *See Papasan,* 478 U.S. at 286.   The tort of tortious interference with contract is thus unavailable to him, and this claim must be analyzed as one for malicious interference with an economic relationship.

To state a claim for malicious interference with economic relations, a plaintiff must allege that there was (1) an intentional and willful act; (2) calculated to cause damage to the plaintiff in his lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) actual damage and loss resulting. *Alexander & Alexander, Inc. v. B. Dixon Evander & Assocs.,* 650 A.2d 260, 269 (Md. 1994) (quoting *Willner v. Silverman,* 71 A. 962, 964 (Md. 1909)).  Here, Plaintiff plainly alleges that he was terminated, an intentional act that resulted in actual damage, satisfying the first and fourth elements.  In *Alexander & Alexander,* the Maryland Court of Appeals summarized prior pertinent pronouncements regarding the second and third elements:

> Most recently, we held in *Macklin v. Logan,* [639 A.2d 112, 119 (Md. 1994)], that malicious interference with economic relations requires "both a tortious intent and improper or wrongful conduct."  In particular, the Court emphasized that tortious intent alone, defined as an intent "to harm the plaintiff or to benefit the defendant at the expense of the plaintiff" (*ibid.*), was not sufficient to turn deliberate interference into a tort, but that the defendant must interfere through improper or wrongful means.

> Therefore, wrongful or malicious interference with economic relations is interference by conduct that is independently wrongful or unlawful, quite apart from its effect on the plaintiff's business relationships. Wrongful or unlawful acts include common law torts and

25

> "'violence or intimidation, defamation, injurious
> falsehood or other fraud, violation of criminal law,
> and the institution or threat of groundless civil
> suits or criminal prosecutions in bad faith.'"
>
> In addition, "actual malice," in the sense of ill
> will, hatred or spite, may be sufficient to make an
> act of interference wrongful where the defendant's
> malice is the primary factor that motivates the
> interference.

*Id.* at 271 (citations, internal quotation marks and internal
brackets omitted).

Plaintiff does not specify in his amended complaint whether
he states a claim for malicious interference on the basis of
"improper or wrongful means" or actual malice; he merely
contends that in firing him, "IBM was not motivated by any
legitimate economic motive" but that "IBM procured Jordan's
termination to punish him for reporting a discriminatory comment
by an IBM employee, and to deter others from reporting or
opposing such conduct."  Am. Compl. at ¶ 33.

To the extent that Plaintiff alleges "improper or wrongful
means," he must allege a supporting "common law tort[,] violence
or intimidation, defamation, injurious falsehood or other fraud,
violation of criminal law, [or] the institution or threat of
groundless civil suits or criminal prosecutions in bad faith,"
*Alexander & Alexander,* 650 A.2d at 271.  From his reply brief,
paper no. 32, it appears that he may wish to assert that his
termination was wrongful insofar as Defendants are liable under

one or more of the other tort claims in his amended complaint, but the court finds that he has stated no such claim, and in any event Plaintiff does not so plead in his amended complaint.  To the extent that he may allege actual malice, he must allege that IBM maintained "ill will, hatred or spite" toward Plaintiff, and that such malice was "the primary factor that motivate[d] the interference." *Alexander & Alexander,* 650 A.2d at 271.  Actual malice "has been characterized as the performance of an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff." *K & K Mgmt., Inc. v. Lee,* 557 A.2d 965, 984 (Md. 1989) (quoting *H & R Block v. Testerman,* 338 A.2d 48, 52 (1975)).  As the court noted in *Alexander & Alexander,* a plaintiff "carrie[s] a heavy burden in trying to establish the interference tort through proof of actual malice.  As explained in [*Macklin,*] 639 A.2d at 121-122, under the broader form of the tort, acts of interference with economic relations do not become tortious simply because the defendant carries them out with a wrongful intent." *Id.*  That court explained that proof of animosity "would not sustain the tort if [the interferor's] animosity was incidental to its pursuit of legitimate commercial goals." *Id.*  Here, Plaintiff has alleged that IBM's conduct was malicious, but has not

connected that legal conclusion to any allegations of fact independent of the alleged wrongful intent to retaliate. Accordingly, Plaintiff's amended complaint, as currently stated, is insufficient as a matter of law.  The court will permit Plaintiff to amend this count of his complaint to allege facts, if any, showing either wrongful means or actual malice.

## IV.  Conclusion

For the reasons stated, IBM's motion to dismiss the original complaint will be granted.  Because the court finds that the amended complaint as presently constructed fails to state any claim upon which relief can be granted, leave to amend will be denied.  *See Foman,* 371 U.S. at 182.  It does not appear that Plaintiff can, under any circumstances, allege sufficient facts to state a claim for retaliation, breach of contract, or fraud, so leave to amend will be denied with prejudice as to those claims.  With regard to the malicious interference claim against IBM and the wrongful discharge and § 1981 race discrimination claims against ARC and/or IBM, Plaintiff will be provided a final opportunity to plead, if he can, facts sufficient to state a claim.  A separate Order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge

March 30, 2005